UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| DAVID WELLS, et al., | ) | |
| --- | --- | --- |
| Plaintiffs, | ) | |
| v. | ) | No. 4:10-CV-2080-JAR |
| FEDEX GROUND PACKAGE SYSTEM, INC., | ) | |
| Defendant. | ) | |
| REGINALD GRAY, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 4:06-CV-422-JAR |
| FEDEX GROUND PACKAGE SYSTEM, INC., | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant FedEx Ground Package System, Inc.'s Motions to Exclude Testimony of Douglas Miller [*Wells* ECF No. 134; *Gray* ECF No. 225] and to Strike Supplemental Reports of Expert Testimony of Douglas Miller. [*Wells* ECF No. 140; *Gray* ECF No. 261] The Motions are fully briefed and ready for disposition.[1] For the following

---

[1] The parties have extensively briefed the motions and submitted an evidentiary record which includes Miller's expert reports and deposition testimony. Accordingly, the Court has determined that it can make a proper Daubert analysis without the need for additional argument. (Doc. No. 195)

reasons, the Court will deny the motions.

**Background**

Plaintiffs are former drivers/contractors with Defendant FedEx Ground Package System, Inc. ("FedEx"). Each Plaintiff executed a "Pickup and Delivery Contractor Operating Agreement" with FedEx Ground which Plaintiffs allege misclassified them as independent contractors when they were in fact employees of FedEx. Plaintiffs have retained Douglas C. Miller, CPA, to assess the amount of compensation, including benefits, that each Plaintiff would have received had they been classified and compensated as employees of FedEx. Mr. Miller has provided a damages report for each of the 41 Plaintiffs (*Wells* Doc. No. 136; *Gray* Doc. No. 227, Exs. 1-41 to Cochenour Decl.),[2] as well as supplemental reports based on payment and job description information obtained from FedEx's sister companies, FedEx Freight Corporation ("FedEx Freight") and FedEx Express Corporation ("FedEx Express"). FedEx has moved to exclude Mr. Miller's testimony and strike his supplemental reports.

**Miller's original report[3]**

In his original reports, Miller's hourly wage comparison was calculated by researching

---

[2]Because Miller's original reports for the Gray and Wells Plaintiffs all use the same methodology, the parties have addressed two sample reports in their briefing - one for Gray Plaintiff Robert Arbutti (*Wells* Doc. No. 136-1; *Gray* Doc. No. 227-1) and one for Wells Plaintiff Alan Dees (*Wells* Doc. No. 136-29; *Gray* Doc. No. 227-29).

[3] Miller relied on the following documents in making his damages assessment: Plaintiffs' Amended Complaint in *Wells* and Sixth Amended Complaint in *Gray*, FedEx's Answer, Plaintiffs' First and Second Interrogatories and FedEx's Responses, FedEx's Interrogatories and Plaintiffs' Responses, Plaintiffs' tax returns, weekly Contract Settlement Statements, Supplemental Settlement Reports, P&D Contractor Business Results, FedEx's Employee Benefits plans from 2004-2012, FedEx's employee pension plan, FedEx's employee retirement benefits, and pay schedules information for FedEx's sister entity FedEx Freight.

internet sites, including GlassDoor.com and CareerBliss.com, for salaries and wages of FedEx Freight drivers. (*Wells* Doc. Nos. 136-1, 136-29, p. 2; *Gray* Doc. Nos. 227-1, 227-29, p. 2) Because the responsibilities and job descriptions for a FedEx Freight driver was "virtually the same," and "almost identical," to the job description for a FedEx Ground driver, Miller used the wages reported for FedEx Freight drivers as a basis for determining hourly wages for Plaintiffs as FedEx Ground drivers, and estimated an hourly wage of $22 per hour for each Plaintiff. (Id.)

To calculate overtime, Miller used Pickup and Delivery Supplemental Settlement Reports ("DSRs"), together with Plaintiffs' Responses to FedEx's First Interrogatories Directed to Plaintiffs, to determine the amount of hours each Plaintiff worked per week. (Id.) No overtime was allotted to work weeks with a holiday or workweeks that the weekly contract settlement statement showed less than five days of work. (Id.) If only one DSR was missing for the week, a conservative estimate of eight hours for the day was inserted into Miller's calculation. (Id.) Additionally, the amount of time driven by any driver other than a named Plaintiff was excluded when calculating overtime hours. (Id.) Based on this information, Miller calculated overtime at a rate of $33 per hour, based on the hourly pay rate of $22 per hour at time and a half. Mo. Rev. Stat. § 290.505(1). (Id.)

Miller calculated holiday and vacation pay based on the six holidays recognized by FedEx and its related subsidiaries. (Id.) Because the FedEx Careers website listed "paid time off" as one of the benefits of employment listed, Miller determined that Plaintiffs would have received ten paid vacation days if they had properly been classified as employees of FedEx. (Id.) From this, Miller accounted for sixteen (16) days of vacation and holiday pay for each Plaintiff, or a pro rata portion of the year if a Plaintiff did not drive for FedEx for the whole year. (Id., pp. 2-3) Miller did not include the eight hours of each holiday in his overtime analysis. (Id., p. 3).

Miller reviewed each Plaintiff's tax returns to determine which expenses would have been paid by FedEx, had FedEx properly classified Plaintiffs as employees, including fuel, auto and truck expenses, interest on a loan for a truck, FICA taxes, property taxes, licenses, permits, vehicle depreciation, and repairs and maintenance. (Id.) To determine the amount of expenses actually related to each Plaintiff, the total number of hours worked by the Plaintiff was added to the total number of hours that other drivers drove for the Plaintiff, and then divided by the total number of hours. (Id.) The resulting percentage was multiplied by fuel costs and the repairs and maintenance expenses listed on the Plaintiff's tax returns. (Id.)

Plaintiffs' Weekly Contract Settlement Statements ("WSSs") were reviewed for adjustments to the total gross income and deductions from the total gross income. (Id.) The main adjustments and deductions added into the damages calculation included the Business Support Package. These amounts were pro-rated to account for any time substitute drivers drove for each Plaintiff. (Id.)

With regard to retirement benefits, FedEx employees are eligible to participate in the company's pension plan or portable pension plan and 401(k) plan. FedEx's annual contribution to the pension plan for each of its employees is actuarially determined based upon that employee's age and annual earnings. Given the complexity of the actuarial formula, Miller acknowledged the difficulty of calculating with certainty the hypothetical contributed benefit for a particular Plaintiff. (Id.) FedEx matches the employee's deferred wages to a certain percentage of income the employee defers into his 401(k) account. (Id.) Over the last ten years, FedEx's company match formula has ranged from a maximum of 7% of the employee's wages to 50% of the first 1% of deferred wages plus 25% of the next 5% of deferred wages. (Id.) Based on this

4

information, Miller estimated a yearly retirement contribution for the pension plan and 401(k) match at $1,000 per year for each Plaintiff. (Id.)

Miller based medical, disability and life insurance benefits on industry averages, and added them to the damages calculation. (Id., p. 4) Finally, he applied Missouri statutory prejudgment interest amount at 3.25%, compounded annually. (Id.)

**Miller's supplemental reports**

Based on documents received from FedEx's sister entities, FedEx Freight and FedEx Express Corporation ("FedEx Express"), containing Driving Codes and Job Titles, Job Descriptions of FedEx Express employees, Merit Hourly Pay Schedules from 1999-2010, and information on the employee benefits and retirement program for FedEx Express employees, Miller supplemented his original reports for both the Wells and Gray Plaintiffs on November 8, 2012. (*Wells* Doc. Nos. 142-1, 142-2; *Gray* Doc. Nos. 263-1, 263-2) Miller concluded that the job duties of FedEx Freight city drivers are "nearly identical" to those of the FedEx Ground drivers and that the duties of FedEx Express couriers are also "very similar" to those of the FedEx Ground drivers. (Id., p. 1) Miller reviewed the pay schedules for FedEx Express employees, together with the FedEx Express website and the job descriptions therein, and used Pay Code 8K-Courier, because in his opinion, it fit most closely with that of a FedEx Ground delivery driver. (Id., p. 2) Because he was not provided with information regarding the differences between the Personnel Records and Information System (PRISM) codes on each schedule, Miller used an average of all of the codes for each year. In his Supplemental Analysis 1 for the Wells Plaintiffs, he arrived at an average hourly wage rate for all PRISM codes for FedEx Express delivery drivers of $22.48; for

5

the Gray Plaintiffs, Miller arrived at an average hourly wage rate of $21.21. (*Wells* Doc. No. 142-1; *Gray* Doc. No. 263-1, pp,. 1-2)

In his Supplemental Analysis 2, Miller reviewed the FedEx Freight pay schedules for entry level to three years. (Id., p. 2). He used the pay schedule associated with FedEx Freight city drivers in Missouri, Geographical Pay Differential (GPD) code B, and prepared a weighted-average hourly rate using Plaintiffs' actual experience driving for FedEx. (Id.) He prepared this weighted-average on the assumption that all drivers start at entry-level pay, no matter what prior driving experience they might have. (Id.)

To further clarify his Supplemental Report for the Wells Plaintiffs, Mr. Miller explained it was based on documents produced by FedEx Freight for the year 2004. In 2004, the pay levels for GPD code B for FedEx Freight were as follows: (a) entry-level: $16.70 per hour, (b) one year of experience: $17.69 per hour, (c) two years of experience: $18.67 per hour; and (d) three years of experience: $19.65 per hour. (Id.) For additional experience above three years, Mr. Miller based future pay increases on the United States Security Administration's annual Cost of Living Adjustment ("COLA"), starting with the year 2000. (Id., pp. 2-5) In 2004, two Plaintiffs were entry level drivers, three had one year of experience, one had two years of experience, one had three years of experience, and seven Plaintiffs had four years experience. (Id.) Mr. Miller then multiplied the number of drivers at each level of experience with the hourly wage rate for that level of experience. The totals were summed and divided by the total number of drivers that worked during the year, based on information contained in Miller's original report. (Id.) As a result, in his Supplemental Analysis 2, Miller determined that the average hourly rate for the years 2004 through 2010 was $21.85. (Id., p. 3) Miller re-confirmed the reasonableness of his

6

original reports for the Wells Plaintiffs, including the $22 per hour wage used to calculate the damages for the Wells Plaintiffs. (Id.)

To further clarify his Supplemental Report for the Gray Plaintiffs, Miller explained it was based on documents for the year 2000. (*Wells* Doc. No. 142-2; *Gray* Doc. No. 263-2, pp. 2-5) In 2000, the pay levels for FedEx Freight City Drivers in Missouri were as follows: (a) Entry-level: $14.66 per hour, (b) One year of experience: $15.53 per hour, (c) Two years of experience: $16.39 per hour; and (d) Three years of experience: $17.25 per hour. (Id.) For additional experience above three years, Miller based future pay increases on the United States Security Administration's annual COLA. (Id.) In 2000, three Plaintiffs were entry-level drivers, and Miller multiplied the number of drivers at each level of experience with the hourly wage rate for that level of experience. (Id.) The totals were summed and divided by the total number of drivers that worked during the year, based on Miller's original damage reports. (Id.) As a result, the supplemental report for the Gray Plaintiffs shows that the average hourly wage rate for the years 2000 through 2009 was $18.98. (Id.) Miller amended his original Reports downward to use an average hourly wage rate of $20.10 per hour for each of the Gray Plaintiffs. (Id.)

**Legal Standard**

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Harrington v. Sunbeam Products, Inc., 2009 WL 701994, *1 (E.D.Mo., March 13, 2009) (citing Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir.2001)). Rule 702 provides that an expert may testify if the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the witness has applied the principles and methods reliably to the facts of the case. US Salt, Inc. v. Broken Arrow, Inc., 563 F.3d 687, 691 (8th Cir. 2009).

Pursuant to this rule, a district court acts as a gatekeeper "to ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Russell v. Whirlpool Corp., 702 F.3d 450, 456 (8th Cir. 2012) (quotation omitted). Further, a court is entitled to substantial discretion in determining whether expert testimony should be allowed. Id. "There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant." Id. at 456-57 (quotation omitted). When evaluating the sufficiency of expert testimony, "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." Minn. Supply Co. v. Raymond Corp., 472 F.3d 524, 544 (8th Cir. 2006) (quotation omitted). "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony." Weisgram v. Marley Co., 169 F.3d 514, 523 (8th Cir.1999), aff'd, 528 U.S. 440 (2000). The Rule "favors admissibility if the testimony will assist the trier of fact." Clark v. Heidrick, 150 F.3d 912, 915 (8th Cir.1998). Doubt regarding "whether an expert's testimony will be useful should generally be resolved in favor of admissibility." Id. (citation and internal quotation omitted).

**Discussion**

**A. Motions to exclude Miller's testimony**

FedEx seeks to exclude Miller's testimony on four grounds. First, he is not qualified to give his opinions because he has no expertise in the small package pickup and delivery industry, or in the area of employee compensation and benefits. (*Wells* Doc. No. 135; *Gray* Doc. No. 226, pp. 6-9) Second, Miller's methodology is unaccepted and unreliable. (Id., pp. 9-11) Third,

8

Miller's opinions are, to a large extent, based on speculation and unfounded assumptions (Id., pp. 12-21), and fourth, his opinions do not "fit" Plaintiffs' claims. In other words, Miller's damages theory does not relate to any legally cognizable harm Plaintiffs allege they suffered. (Id., pp. 21-23)

FedEx does not directly challenge Miller's expert qualifications in accounting.[4] Miller holds degrees in accounting, business administration and law. He has significant accounting experience and has been retained to provide expert witness opinions on several occasions regarding various business valuation matters. Rather, it is FedEx's position that to qualify as an expert in this case, Miller needs to have knowledge of the small package pickup and delivery industry in which FedEx operates, as well as employee compensation and benefits. (Id., pp. 6-8 )

The Court is satisfied that Mr. Miller is qualified to testify regarding Plaintiffs' damages in this case based on his education, training, and knowledge as a certified public accountant for over thirty years and experience in the fields of accounting and business valuation. The fact that he has not had experience in the field of small package pickup and delivery industry does not persuade the Court otherwise. See, e.g., Craftsman Limousine, Inc. v. Ford Motor Company,

---

[4]As described by Plaintiffs, Mr. Miller is a certified public accountant who has been a principal and the managing partner of the accounting firm of Miller, Haviland and Ketter PC, PA for nearly 30 years. (Curricululm Vitae for Douglas C. Miller, CPA-ABV, Doc. No. 136-1) He received his Bachelor of Science in Business Administration in 1971, his Juris Doctor in 1973, and his CPA Certificate for the states of Kansas and Missouri in 1976. Mr. Miller has been accredited in business valuation, is a member of the American Institute of Certified Public Accountants and the Institute of Business Appraisers, and is the chairman of the Heart of America Tax Institute. Throughout his 38-year career as a certified public accountant, Mr. Miller has represented numerous organizations, consisting of, but not limited to, clients with industry specializations in real estate, transportation, hospitality, retail, and insurance. Additionally, throughout his career Mr. Miller and the other principals of his accounting firm have been retained to provide expert witness opinions on several occasions regarding various business valuation matters.

9

2002 WL 34448786, at *1 (W.D. Mo. Aug. 28, 2002) ("Mr. Cole has been retained to testify regarding lost profits to a company, alleged to be caused by defendants' actions. The Court does not believe his being qualified to do so is contingent on expertise in the field, if it exists, of anti-trust economics. Accordingly, the Court finds that Mr. Cole is qualified to testify as an expert in this case."); Loeffel Steel Products, Inc. v. Delta Brands, Inc., 387 F.Supp.2d 794, 801-02 (N.D.Ill. 2005) (rejecting argument that in order to qualify as a damages expert, business appraiser must have specific experience with the specific industry and type of machine at issue); and Baisden v. I'm Ready Productions, Inc., 2010 WL 1855963, at *5 (S.D.Tex. May 7, 2010) (finding expert qualified despite having "limited experience in the valuation of feature films" because he "possesse[d] a significant amount of experience generally in . . . damage assessment related to intellectual property infringement.") Miller's relative experience in the matter at issue may be explored on cross-examination. Semi-Materials Co., Ltd. v. MEMC Electronic Materials, Inc., 2011 WL 134078, at *5 (E.D.Mo. Jan. 10, 2011) (citing Allen v. Brown Clinic, P.L.L.P., 531 F.3d 568, 574 (8th Cir.2008)). "Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096, 1100–01 (8th Cir.2006) (internal quotation marks and citation omitted). See also Lauria v. Nat'l R.R. Passenger Corp., 145 F.3d 593, 598 (3d Cir.1998) (holding trial court abused its discretion by excluding testimony simply because the trial court did not deem proposed expert to be the best qualified or because proposed expert did not have the specialization that the trial court considered most appropriate).

FedEx further argues that Miller's testimony should be excluded because he is not expressing his own opinions. Rather, he consulted with an insurance benefits industry expert, J.

Duncan McInnis, and did not reference McInnis in his report. (*Wells* Doc. No. 135; *Gray* Doc. No. 226, p. 8) Miller admits he contacted McInnis for an evaluation of FedEx employee benefits against a similar industry, but did not solely rely on McInnis' opinions in calculating the hourly wage analysis in this case. (Miller Depo., 34:6-11) (*Wells* Doc. No. 150; *Gray* Doc. No. 271, pp. 15-16)

Rule 703 permits an expert to rely on facts and data that an expert in the particular field would reasonably rely upon, including the opinion of another expert. See, Sosna v. Binnington, 321 F.3d 742, 746 (8th Cir.2003) (citing Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc., 125 F.3d 1176, 1182 (8th Cir.1997)). It "is common in technical fields for an expert to base an opinion in part on what a different expert believes on the basis of expert knowledge not possessed by the first expert." In re Genetically Modified Rice Litigation, 666, F.Supp.2d 1004, 1033 (E.D.Mo. 2009) (quoting Dura Auto. Sys. of Ind., Inc. v. CTS Corp., 285 F.3d 609, 613 (7th Cir.2002)). When determining whether to allow expert testimony, courts consider whether the proffered expert has the ability to evaluate the opinions on which he relies. Minn. Supply Co. v. Raymond Corp., 472 F.3d 524, 544 (8th Cir. 2006) (citing Children's Broad. Corp. v. Walt Disney Co., 357 F.3d 860, 864 (8th Cir. 2004). Miller testified he has the expertise to know the benefits provided to FedEx employees, as well as the knowledge that FedEx's employee benefits were common in the trucking industry. (Miller Depo. 34:17-35:4)

FedEx's complaints actually relate to the factual basis of Miller's testimony. As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer

no assistance to the jury must such testimony be excluded. Bonner v. ISP Tech., Inc., 259 F.3d 924, 929–30 (8th Cir.2001). Accordingly, questions of conflicting evidence are left up to the jury, and a trial court should resolve doubts regarding an expert's testimony "in favor of admissibility." Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 758 (8th Cir. 2006). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Kudabeck v. Kroger Co., 338 F.3d 856, 862 (8th Cir.2003) (citing Daubert v. Merrel Dow Pharmaceuticals, Inc., 509 U.S. 579, 596 (1993)).

Next, FedEx challenges the reliability of Miller's methodology for calculating damages, arguing that Miller's reliance on a Massachusetts case, Somers v. Converged Access, Inc., 911 N.E.2d 739 (Mass. 2009), is misplaced. In Somers, the court held that an employee who has been misclassified as an independent contractor is entitled to damages under the Massachusetts wage statute, Mass. Gen. Laws ch. 149 §§ 148, 148B and 150. (Doc. No. 135, p. 11) FedEx maintains that a Somers-based methodology is not generally accepted. Moreover, in Somers the court was analyzing rights under two Massachusetts statutes, which have no bearing on Plaintiff's Missouri state law claims. (Id.)

In response, Plaintiffs state there is no guidance under Missouri law, state or federal, or Eighth Circuit law, that instructs on how damages should be calculated when employees have been improperly classified as independent contractors and that Somers is the only case to address the issue. (*Wells* Doc. No. 150; *Gray* Doc. No. 271, pp. 18-19) In Somers, the court held that "[a]n employee misclassified as an independent contractor, as a matter of law, *is* an employee; his contract rate is his wage rate; and his 'damages incurred' equal the value of wages and benefits he

should have received as an employee, but did not," including holiday pay, vacation pay, and overtime. 911 N.E.2d at 744, 751.

FedEx also contends that Miller's opinions are based on speculation and unfounded assumptions. In particular, Miller assumes Plaintiffs would have been paid the same hourly rate as employee-drivers working at FedEx Freight, Inc., despite the fact that Freight has a different business model than FedEx. Miller assumes Plaintiffs would be paid an hourly rate of $22 per hour, based on information about Freight employee-driver hourly rates from unverified websites that Miller did not personally review. Miller makes assumptions about the number of hours Plaintiffs "worked" based on data that does not indicate when Plaintiffs were actually working, and extrapolates annual hours from small samples of data that may not be representative. Finally, Miller assumes if Plaintiffs had been employees they would have received numerous benefits from FedEx, even though not all FedEx employees receive such benefits, and there are no FedEx employees with jobs comparable to Plaintiffs.

The Court has carefully reviewed Miller's opinions, as well as the evidence and information upon which his opinions are based, and cannot conclude that his testimony is so fundamentally unsupported it could offer no assistance to the jury. FedEx will have the opportunity to challenge Miller's assumptions and methodology through cross-examination and contrary evidence. Such opportunity for "cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. See also Synergetics, Inc. v. Hurst, 477 F.3d 949, 955–56 (8th Cir.2007); EFCO Corp. v.. Symons Corp., 219 F.3d 734, 739 (8th Cir.2000) (no abuse of discretion in allowing plaintiff's expert witness to testify as to

damages where defendant's expert, who disputed plaintiff's expert's methodology, also testified; jury left with ultimate decision as to which damages theory was more sound).

Finally, FedEx argues Miller's testimony should be excluded because his damages theory is inconsistent with the "benefit of the bargain" approach required under Missouri law for claims of fraud. (*Wells* Doc. No. 135; *Gray* Doc. No. 226, pp. 21-23) The Court rejected this argument in its order denying FedEx's motion for summary judgment on Plaintiffs' fraudulent misrepresentation claims. Although the primary measure of damages for fraud in Missouri is the benefit of the bargain, the use of other measures of damages are permitted when the benefit of the bargain rule does not accurately measure the loss sustained. Glass Design Imports, Inc. v. Import Specialties, 867 F.2d 1139, 1143 (8th Cir. 1989) (citing Central Microfilm, 688 F.2d at 1220); Kerr v. First Commodity Corp., 735 F.2d 281, 285 (8th Cir. 1984)).The "bargain theory" measure is the difference between the actual value and the represented value of the subject of the transaction. Central Microfilm, 688 F.2d at 1220 (citing Smith v. Tracy, 372 S.W.2d 925, 938 (Mo. 1963)). In this case, FedEx did not make representations as to specific values; rather, it induced Plaintiffs to work as employees without the benefits inherent in an employer/employee relationship. Thus, the resultant harm is best measured by what Plaintiffs would have been paid had they been employees, as opposed to what they were actually paid while classified as independent contractors. Central Microfilm, 688 F.2d at 1220-21.

Accordingly, FedEx's motion to exclude Miller's testimony will be denied.

**B. Motions to strike Miller's supplemental reports**

FedEx moves to strike Miller's supplemental reports on the grounds that they are not permissible supplemental disclosures under Fed. R. Civ. P. 26(e). In these reports, FedEx

contends Miller offers three completely new opinions: (1) that the duties of "FedEx Express couriers" are "very similar" to those of FedEx pick up and delivery drivers; (2) that the job description of a "Pay Code 8K– Courier" employee at Express, "fits most closely with that of a FedEx Ground delivery driver"; and (3) that FedEx contractors are most like Freight "City Drivers" paid under "Geographical Pay Differential (GDP) code B." (*Wells* Doc. No. 141; *Gray* Doc. No. 262, pp. 4-5) Additionally, Miller provides two new bases—which he terms "Supplemental Analysis 1" and "Supplemental Analysis 2"—to bolster his opinion regarding the hypothetical wage rate at the center of his damages opinion for each Plaintiff. (Id. at 5)

FedEx further argues that because Plaintiffs cannot demonstrate these untimely disclosures are substantially justified or harmless under Fed. R. Civ. P. 37(c), Miller should be precluded from offering the testimony contained in the "supplemental" reports. (*Wells* Doc. No. 141; *Gray* Doc. No. 262, pp. 9-11) Alternatively, FedEx requests an opportunity to take another deposition of Mr. Miller and disclose its own damages expert. (*Wells* Doc. No. 201; *Gray* Doc. No. 323, p. 5)

Plaintiffs respond that Miller's reports cannot be considered "new" because he was merely updating his reports based on information he received after submitting his original reports; there is no new theory or methodology implemented in his damages analysis. (*Wells* Doc. No. 193; *Gray* Doc. No. 315, p. 1) To the extent FedEx claims Plaintiffs' supplemental reports are untimely, Plaintiffs note they repeatedly requested this information from FedEx, within the proper dates set forth in the Court's case management order, and served two subpoenas duces tecum on FedEx's sister companies, as well as a motion to compel on FedEx, in order to obtain it. (Id., p. 2) Because FedEx was aware for months that Plaintiffs were seeking additional relevant information

pertinent to Miller's damages analysis, Plaintiffs contend that FedEx cannot show prejudice such that the supplemental reports should be excluded. (Id.)

**Legal standard**

Fed.R.Civ.P. 26 governs the disclosure of expert testimony. Rule 26 provides in relevant part that a party must disclose any person whom it plans to use at trial to present expert evidence. Fed. R. Civ. P. 26(a)(2)(A). The expert must submit a report that contains "a complete statement of all opinions to be expressed and the basis and reasons therefor." Fed. R. Civ. P. 26(a)(2)(B). Under Fed. R. Civ. P. 26 (e)(1), parties have a duty to supplement expert reports to include information later acquired if the disclosure is incomplete or incorrect.

**Discussion**

The Court recognizes that Miller's supplemental disclosures were made over a month beyond the October 1, 2012 deadline set by the Court for Plaintiffs' expert witness disclosures. As such, a truly new expert opinion would be untimely and subject to exclusion. The key is whether Miller's supplemental reports are in fact "supplements" as envisioned by the Federal Rules of Civil Procedure. Rule 26(e) allows supplemental expert opinions for the purpose of "adding information that was not available at the time of the initial report." American Builders & Contractors Supply Co., Inc. v. Roofers Mart, Inc., 2012 WL 2119084, 1 (E.D.Mo. June 11, 2012) (quoting Sancom, Inc. v. Qwest Communications Corp., 683 F.Supp.2d 1043, 1063 (D.S.D. 2010)). Here, Miller's reports are based on discovery Plaintiffs received regarding Express and Freight drivers that was not previously available to them due, in part, to FedEx's actions. On October 1, 2012, the disclosure deadline, this Court ordered FedEx to produce information relating to the compensation, benefits and job descriptions for persons who have driven trucks for

16

FedEx Freight, Inc., no later than October 11, 2012. (*Wells* Doc. No. 99) According to Plaintiffs, FedEx Freight provided them with additional information on October 29, 2012. The supplemental reports were then prepared and submitted on November 8, 2012. Under these circumstances, the Court finds the supplemental reports are not untimely.

The Court further finds there is no prejudice to FedEx because Miller has not changed his methodology or his calculations; the reports did not result in an increase of damages or set forth some other different theory of damages. In fact, with respect to the Gray Plaintiffs, Miller adjusted the hourly wage rate downward to $20.10. The general rule that experts may not testify on opinions not disclosed during the scheduled expert discovery period is usually relaxed to allow damages calculations to be updated through the time of trial. In re Genetically Modified Rice Litigation, 2009 WL 3336086, at *1 (E.D.Mo. Oct. 6, 2009).

Finally, these cases have not yet been re-set for trial. If FedEx wishes to reopen the deposition of Mr. Miller to examine him regarding his supplemental reports, then Plaintiffs will be directed to make him available for such an examination. The Court will also allow FedEx a reasonable period of time in which to disclose its own expert on damages. FedEx's motion to strike the supplemental reports of Mr. Miller will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant FedEx Ground Package System, Inc.'s Motions to Exclude Testimony of Douglas Miller [*Wells* 134; *Gray* 225] and to Strike Supplemental Reports of Expert Testimony of Douglas Miller [*Wells* 140; *Gray* 261] are **DENIED.**

Dated this 27th day of September, 2013.

                                               _____
                                               JOHN A. ROSS
                                               UNITED STATES DISTRICT JUDGE